Vagalebre v. SAU 47    CV-97-135-JD  07/23/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Vagalebre, et al.</u>

  v.         Civil No. 97-135-JD

<u>SAU 47, et al.</u>


O R D E R


The plaintiffs, George Vagalebre, Marilynn Vagalebre, and Toni Hornak are the parents of student athletes who attend Conant High School.  The defendants are the Jaffrey-Rindge school district ("school district") and the Jaffrey-Rindge school board ("school board").[1]  Before the court is the defendants' motion for summary judgment on the plaintiffs' sole remaining claim asserting that the school board and the school district engaged in viewpoint discrimination (document no. 16).


<u>Background</u>[2]

The court incorporates by reference the factual background

---

[1]The court references <u>Vagalebre v. SAU 47</u>, Civ. No. 97-135-JD, slip op. at 19 n.6 (D.N.H. filed Feb. 24, 1998) and addresses only those parties of direct relevance to this claim.  In light of the court's conclusion, the court need not differentiate between particular plaintiffs and defendants.

[2]The facts discussed herein are not disputed by the parties or are alleged by the plaintiffs.

discussed in <u>Vagalebre v. SAU 47</u>, Civ. No. 97-135-JD (D.N.H. Feb. 24, 1998). The plaintiffs initially brought claims asserting, <u>inter alia</u>, a deprivation of their First and Fourth Amendment rights through allegedly unconstitutional drug testing and search policies. The court granted the defendants' motion to dismiss for all but one of the plaintiffs' claims. The plaintiffs' remaining claim asserts that the defendants applied their public participation policy governing school board meetings in a manner that discriminated against the plaintiffs' viewpoint.

On October 1, 1990, the school district adopted a public participation policy to govern school board meetings. The policy required individuals desiring to participate to register in advance of the school board meeting. However, the application of the policy was inconsistent. From October 16, 1995, until April 1, 1996, the school board did not require individuals to register in advance of the meetings to speak, but instead allowed them to stand up and participate when their topic of interest arose. The plaintiffs were permitted to participate on these terms during this period of time.

Between April 1, 1996, and September 16, 1996, the public participation policy actually applied by the school board continued to vary. At some times participants were permitted to speak without registering in advance, although at other times the

2

school board required their registration.  As of the September 16, 1996, meeting, however, the public participation policy formally adopted on October 1, 1990, was generally adhered to. Regardless of the topic discussed or the viewpoint expressed, its application was largely consistent.  Throughout the various different participation policies actually used by the school board, the plaintiffs repeatedly spoke at the meetings.

## Discussion

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence."  Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (citations omitted), cert. denied, 115 S. Ct. 56 (1994).  Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial[,]" Anderson v. Liberty Lobby, Inc., 477

3

U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer the "swing of the summary judgment scythe." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party, Anderson, 477 U.S. at 248; 'material' means that the fact is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248).

In an earlier order, this court found facially valid the public participation policy adopted by the school board to govern its meetings. See Vagalebre v. SAU 47, Civ. No. 97-135-JD slip op. at 17 (D.N.H. filed Feb. 24, 1998). However, the plaintiffs allege that the defendants applied their public participation policy in a manner that discriminated against their viewpoint. The administration of regulations or policies in such a manner as to discriminate against particular viewpoints is an abridgment of First Amendment rights. See Gay Lesbian Bisexual Alliance, 110 F.3d 1543, 1149 (11th Cir. 1997) ("Viewpoint discrimination, however, is impermissible 'when directed against speech that is otherwise within the forum's limitations.'") (quoting Rosenberger, 515 U.S. at 830).

4

The defendants challenge the plaintiffs' claim of viewpoint discrimination, asserting that the policy was applied evenhandedly without regard to the identity of the speakers or their viewpoints. The minutes of the school board meetings that were submitted by the defendants indicate that although the policy was applied inconsistently over time, it was applied consistently as between individuals, without regard to the issues or viewpoints they espoused.

Toni Hornak attests that on November 4, 1996, she wished to speak at the school board meeting but was not allowed as she was not on the agenda for the meeting. See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Toni Hornak Aff. at 1. Moreover, at other meetings, both before and after the meeting where Toni Hornak was prevented from speaking, other individuals were allowed to participate without being on the agenda. See id. George Vagalebre attests that after he and his wife began speaking out against the random drug testing and suspicion-less search policies, the school board:

> began enforcing a policy that was "on the books," but that hadn't been enforced before. In the past, any taxpayer could speak during the public comment session. Now, the School Board requires anyone who wishes to speak, to call the School Administrative Unit a week before a meeting. That person must give the office his name and the topic he wishes to discuss in order to be on the agenda.

5

Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, George Vagalbre Aff. at 4.

None of these contentions, when viewed in light of the record as a whole, are enough to adequately substantiate a claim that the defendants engaged in viewpoint discrimination. The school board was inconsistent with its requirement that participants register in advance; at some meetings it was enforced and at others it was not. However, the record indicates that whatever policy was actually implemented at particular meetings, it was applied to participants without regard to their viewpoint or the issue raised. Individuals in support of the contested drug testing and search policies, as well as those opposed to the policies, were required to register. People speaking on entirely different issues were required to register. Even the superintendent was required to register in advance. For the same reasons, on this record, the mere facts that: (1) the school board began enforcing its public participation policy at some time after the plaintiffs began voicing their viewpoint; and (2) on occasion individuals were allowed to ask questions without registering in advance, do not establish a genuine issue of material fact as to whether the policy was applied in a discriminatory manner.

6

## Conclusion

The court grants the defendants' motion for summary judgment (document no. 16) and orders the clerk to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

July 23, 1998

cc:  Dawn E. Caradonna, Esquire
     Diane M. Gorrow, Esquire